## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.  07-22680-CIV-HUCK

TAMARA REGLA REYES, individually
and as personal representative of the
Estate of ERUSLANDI ALADRO,

       Plaintiff,

vs.

CITY OF MIAMI BEACH, P. RICE
JACKSON, and T. SERRANO,
 individually,

       Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF
## MIAMI BEACH'S MOTION TO DISMISS COUNTS I, II, VII, AND VIII

       THIS CAUSE is before the Court upon Defendant City of Miami Beach's Motion to Dismiss Counts I, II, VII, and VIII of the Complaint, filed October 18, 2007 [D.E. #3].  In its Motion, Defendant City of Miami Beach ("the City") argues that Counts I and II should be dismissed because Plaintiffs cannot recover from the City where the City employees' actions were allegedly taken in bad faith or with malice, invoking section 728.28 of the Florida Statues.  The City also moves to dismiss Counts VII and VIII, claiming those counts fail to state a cause of action against a municipality under 42 U.S.C. § 1983.  Further, the City moves to dismiss any requested damages resulting from Defendant Aladro's suicide, claiming that Aladro's suicide was a supervening event that necessarily broke the chain of causation from any of the City's allegedly wrongful acts.  The Court has reviewed the Motion, Plaintiffs' Response, the City's Reply, and the Complaint.  For the reasons set forth below, the City's Motion is GRANTED IN PART AND DENIED IN PART.

## I.  PROCEDURAL AND FACTUAL BACKGROUND[1]

       On September 6, 2003, Plaintiffs were walking their dogs through a park in the area of Collins Avenue and 81st Street in Miami Beach.  Plaintiff Tamara Regla Reyes was carrying her dog

_____

     [1]  This factual background is derived from Plaintiffs' Complaint, as the factual allegations in a complaint must be taken as true when reviewing a motion to dismiss.

in her arms – the dog had a leash attached to its neck, and Reyes held the other end of the leash in her hand.  Plaintiff Erislandi Aladro, Reyes' husband, was walking with Reyes.  At this point Defendant P. Rice-Jackson, a police officer with the City of Miami Beach Police Department, approached Reyes and asked her to produce a dog leash and plastic bag.  Reyes cooperated with the request and also provided Officer Rice-Jackson with identification.  Officer Rice-Jackson then began writing Reyes a ticket without articulating a reason why.  When Reyes asked on what grounds Officer Rice-Jackson was issuing her a ticket, Officer Rice-Jackson informed her that if Reyes left and/or refused to sign the ticket, Reyes would be placed in jail.  Reyes informed Officer Rice-Jackson that she would sign the ticket, but asked for the Officer's name.  Officer Rice-Jackson refused to tell Reyes her name, and became upset when Reyes asked that a supervisor be called.  Officer Rice-Jackson then threw Reyes against the police car using excessive force, placed Reyes in handcuffs, and informed her that she was under arrest.  Aladro witnessed this incident.  When Aladro verbally protested, Officer Rice-Jackson used excessive force on him as well.   In her subsequent police report, Officer Rice-Jackson falsely claimed that her use of force on Plaintiffs was necessary, apparently claiming she used force in self-defense.

At some point during this incident Officer Serrano, another City of Miami Beach police officer, arrived on the scene.  One or both of the Officers (the Compliant does not specify which Officer took what action) pushed Aladro to the ground, punched him in the face, and kicked him several times.  Aladro did not resist the Officers at any time.

Reyes witnessed the Officers' use of excessive force against her husband Aladro from the police car, where she sat handcuffed.   As Reyes witnessed the Officers using excessive force on Aladro, she "fered [sic] for her life."  When she protested the treatment of Aladro, Officer Rice-Jackson returned to the police car and pulled Reyes from the car by her arm.  One of Reyes' handcuffs had come undone and upon seeing this Officer Rice-Jackson threw Reyes to the ground, kicked her in the back, and restrained her again.  Sometime after this, paramedics were summoned to the park and attended to Aladro.  While Aladro received medical attention, Reyes was taken to a police station.  Thereafter, in an attempt to "cover up" their use of excessive force against Plaintiffs, the Officers knowingly instituted false charges against Plaintiffs.  After many months the charges were finally nolle-prossed, including the citation for "dog running at large, no leash."

2

As a result of the Officers' actions, Reyes experienced serious damage to her shoulders, back, and knees, and Aladro experienced serious lacerations to his face and also contusions on the rest of his body.  Further, subsequent to the Officers' actions, Aladro became depressed and committed suicide.  The Complaint does not specify when Aladro committed suicide.

Plaintiffs filed suit in state court, and the City removed the case to this Court on October 11, 2007.  *See* D.E. #1.  On October 18, 2007 the City filed a motion to dismiss the counts against it in the Complaint, which is now fully briefed and ripe for resolution.

## II.  MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).  Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)).  Nonetheless, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate.  *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## III.  ANALYSIS

### A.    Counts I and II

In Counts I and II of their Complaint, Plaintiffs seek to recover from the City based on its employee' "excessive and unreasonable" use of force committed in the scope of their employment and amounting to "unwarranted assault and battery."

Plaintiffs claim the City is liable for its employees' actions under Florida's sovereign immunity law, section 768.28 of the Florida Statutes.  With section 768.28, the Florida legislature waived sovereign immunity for the state, its agencies and subdivisions for certain types of tort actions, but explicitly reserved sovereign immunity over actions committed by an employee " in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a); *see also Dist. Sch. Bd. of Lake County v.*

*Talmadge*, 381 So. 2d 698, 699-703 (Fla. 1980) (recognizing the legislature's waiver of sovereign immunity in section 768.28 for tort actions "within certain express limitations" and holding that under this section, "individual suits against an employee, but not against the state, are possible whenever the employee . . . has acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property"); *McGhee v. Volusia County*, 679 So. 2d 729, 730 (Fla. 1996) ("[Section 768.28(9)(a)] provides that Florida's waiver of sovereign immunity does not apply to, and governmental employees may be personally liable for, acts beyond the scope of their duties, committed in bad faith or with malicious purpose, or that exhibited wanton and wilful disregard of human rights, safety, or property.").

The City argues that it cannot be held liable for any of the alleged acts of excessive force used by the Officers when they stopped and arrested Plaintiffs. This is because, the City contends, if these allegations are true, they describe behavior that could *only* be outside the scope of the Officers' employment or committed with bad faith, malicious purpose, or wanton and willful disregard for human rights. As an initial matter, this Court notes that Florida courts have held that section 768.28 effectively waived sovereign immunity for negligent and "intentional" torts alike, including claims for excessive force. *See, e.g.*, *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123-24 (Fla. 4th DCA 1987); *City of Fort Lauderdale v. Todaro*, 632 So. 2d 655, 657 (Fla. 4th DCA 1994) ("As [section 768.28] has evolved, it appears the governmental entity is liable for all torts, negligent ones and intentional ones alike, unless they are committed outside the course and scope of one's employment or unless the actor was acting in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."). Thus, the fact that Plaintiffs claim the Officers committed assault and battery using excessive force does not necessarily insulate the City from liability for their acts.

In Counts V and VI, which are counts under section 768.28 against the Officers themselves, Plaintiffs allege the Officers acted with malice or bad faith. However, in Counts I and II, which are counts under section 768.28 against the City, Plaintiffs allege the Officers' use of force was "excessive and unreasonable" and taken within the scope of their duties, making no mention of malice or bad faith. As Plaintiffs correctly point out, Federal Rule of Civil Procedure 8(e)(2) authorizes pleading in the alternative. Further, section 768.28 tends to cause plaintiffs to bring

"mutually exclusive" claims in the alternative against a governmental entity and its employees because the state is immune from acts committed with bad faith or malice, while employees must have acted with bad faith or malice to be held personally liable. *See Bryan Media, Inc. v. City of St Petersburg*, No. 8:05CV291MSS, 2005 WL 2371992, *8 (M.D. Fla. Sept. 27, 2005) (*citing Johnson v. Sackett*, 793 So. 2d 20, 23 (Fla. 2d DCA 2001)); Fla. Stat. § 768.28(1), (9)(a).

Here, Plaintiffs' factual allegations could support a cause of action against the City for assault and battery based on the excessive, but not malicious, actions of its employees, such that the question should not be taken away from the jury at this point. According to Plaintiffs, the Officers approached them in a park to address whether their dog was on a leash, used excessive force in the course of stopping them and handcuffing and arresting Reyes, and ultimately issued both Plaintiffs a citation (which they knew to be false) for "dog running at large, no leash." Accepting Plaintiffs' account as true and drawing all reasonable inferences in their favor, as the Court must in the context of a motion to dismiss, the Court cannot say that such allegations could *only* describe acts outside the scope of the Officers' employment or acts "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

In *Dukes v. Miami-Dade County*, No. 05-22665-Civ-Huck/Simonton (S.D. Fla. July 5, 2006), this Court held that, because of the severe nature of the plaintiff's allegations against the individual police officers, those allegations could *only* suggest malice or bad faith, and thus could not support a claim against the municipal employer. However, in *Dukes* the plaintiff alleged that after shooting him in the chest, the defendant officers slammed his body and face into the ground and stomped him with their feet while he was in the process of surrendering. The allegations here do not rise to the same level of severity as in *Dukes*. Further, the City cites to *Sanchez v. Miami-Dade County*, No. 06-21717, 2007 WL 1746190 (S.D. Fla. Mar. 28, 2007) in support of its Motion. In that case, this Court held that a plaintiff could not sue the municipal employer for its police officers' actions where those officers handcuffed the plaintiff, instigated a fight between him and another citizen, then abandoned the plaintiff far from home. Again, the allegations here do not rise to that level of severity. Moreover, in *Sanchez* it appears the plaintiff did not plead that the officers acted in the course and scope of their duties, whereas here Plaintiffs did make such an allegation. Accordingly, the City's Motion to Dismiss Counts I and II is DENIED.

5

**B.     Counts VII and VIII**

In Counts VII and VIII of their Complaint, Plaintiffs seek to recover from the City based on 42 U.S.C. § 1983.  Both Plaintiffs allege that the City:

> approved of, acquiesced to and/or condoned the violations [of Plaintiffs' constitutional rights] in general, thereby ratifying and approving the wrongful acts of its officials; [the City] failed, through knowing and/or reckless and/or deliberate and/or conscious indifference, to instruct, supervise, control and discipline, on a continuing basis, the duties of personnel and officials to refrain from unlawful actions against Plaintiff; and [the City] did not properly train its personnel despite actual knowledge of their deficiencies and/or through deliberate indifference to those deficiencies.

Compl. ¶¶ 46, 52.

As an initial matter, it is clearly established that a municipality, such as the City of Miami Beach, cannot be held liable under section 1983 for the acts of its employees under a theory of *respondeat* superior.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under  a theory of *respondeat superior.*"); *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) ("A governmental entity is not liable under § 1983, merely as a matter of *respondeat superior*, for constitutional injuries inflicted by its employees."); *Tennant v. Fla.*, 111 F. Supp. 2d 1326, 1331 (S.D. Fla. 2000) ("[T]here is no *respondeat superior* liability making a municipality liable for the wrongful actions of its police officers.").  Indeed, a municipality may only be held liable under section 1983 where there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Bd. of County Comm'rs v. Brown*, 520 U.S. at 404.  Specifically, a plaintiff may seek to establish a municipality's liability by identifying "either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."  *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  Further, municipal liability may be based on a claim of inadequate training or supervision where a municipality's failure to train or supervise its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, such that the failure "'can be properly thought of as a [municipal] policy or custom that is actionable under § 1983.'"  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489-90 (11th Cir. 1997) (quoting *City of Canton*, 489 U.S. at 389).

6

Regardless of whether a plaintiff attempts to state a claim under section 1983 by alleging a policy or a custom, he or she must also identify an official who speaks with "final policymaking authority for [the County] concerning the act alleged to have caused the particular constitutional violation in issue." *Grech*, 335 F.3d at 1330.  Indeed, "municipal liability under § 1983 attaches where- and only where- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "The fact that a particular official- even a policymaking official- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion," because the "official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id*. at 481-83 (citation omitted).

Here, Plaintiffs failed to state a proper section 1983 claim against the City.  This is because Plaintiffs failed to allege that their injuries occurred as a direct result of an official policy or widespread custom of the City. The mere fact that Plaintiffs included the words "official custom, course and policy" in their Complaint cannot save their section 1983 claims.  Compl. ¶¶ 45, 51. Indeed, Plaintiffs should have alleged more than their own incident – as in *Sanchez*, Plaintiffs have alleged only their own incident, and have alleged "nothing to show it was not . . . isolated." *Sanchez*, 2007 WL 1746190, *3.  As this Court stated in *Sanchez*, an "allegation that the [municipality] did not train and supervise its officers with no specifics is not sufficient to establish that the police officers were acting under an official [municipal] policy."  *Id.* at *2; *see also, e.g.*, *Hall v. Smith*, 170 Fed. Appx. 105, 108 (11th Cir. 2006) (affirming dismissal of section 1983 claim against a municipality where the plaintiff "alleged no factual support for his conclusory statement that the [municipality] had a policy or custom of grossly inadequate supervision and training of its employees"); *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993) (affirming dismissal of section 1983 claim against the county where plaintiff failed "to allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability"); *Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213 (S.D. Fla. 2007) (dismissing section 1983 claim where plaintiffs "failed to allege any facts" in support of their claim beyond their own incident).

Plaintiffs also failed to actually identify an official who held "final policymaking authority"

for the City in the areas of police officer training and supervision. *Grech*, 335 F.3d at 1330. Instead, they vaguely referred to the "highest ranking available supervisory personnel" who allegedly approved of the "wrongful acts of [the City's] officials." Compl. ¶ 46.

Plaintiffs assert that their section 1983 claims against the City should not be dismissed because there is no heightened pleading standard for such claims against municipalities, citing to *Leatherman v. Tarrant County Narcotics Unit*, 505 U.S. 1243 (1993). While this is generally true, it is also true that under Federal Rule of Civil Procedure 8(a), plaintiffs must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1965 (citation omitted). Plaintiffs must offer factual allegations that are sufficient to "raise a right to relief above the speculative level." *Id.* (citation omitted); *see also, e.g.*, *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss."). In recounting only their own alleged incident, offering no other facts to support their claim that the City had an official policy or widespread custom that was directly responsible for their injuries, and failing to identify even one responsible final City policymaker, Plaintiffs have failed to raise their section 1983 claim against the City above the speculative level.

In sum, for the reasons set forth above, Plaintiffs' section 1983 claims against the City fail as a matter of law and are DISMISSED WITHOUT PREJUDICE. Plaintiffs may amend their Complaint in order to state proper causes of action against the City under section 1983.

## C.    Claim of damages based on Aladro's suicide

In paragraph 18 of their Complaint describing Plaintiffs' injuries and requested damages, Plaintiffs seek to recover based on Aladro's suicide. Specifically, Plaintiffs state that Aladro "became depressed and committed suicide. Additionally, as a result of these acts, [Reyes] has lost the support and services of her lawful husband, [Aladro], and [Aladro] lost the support and services of his lawful wife [Reyes]."

The City moved to dismiss Plaintiffs' request for damages insofar as they seek to recover based on Aladro's suicide. The City claims that Aladro's decision to commit suicide was an "unforeseeable, intervening cause of death" for which the City cannot be held liable. Plaintiffs claim that "the issue of whether the suicide of Plaintiff Aldoro [sic] was an intervening cause should be

decided after all of the evidence is presented."

At this stage, pursuant to Rule 8(a), Plaintiffs need only give the City "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (quoting *Conley*, 335 U.S. at 47). As stated above, at this stage Plaintiffs have adequately pled a claim against the City under section 768.28, and part of Plaintiffs' requested relief are damages based on Aladro's suicide. Taking all reasonable inferences in Plaintiffs' favor, as the Court must at this stage, it appears that Plaintiffs essentially allege that as a result of the City employees' assault and battery upon Plaintiffs, Aladro became depressed and killed himself. Assuming that all allegations in the Complaint are true, even if "doubtful in fact," Plaintiffs have raised their right to such recovery "above the speculative level" at this point. *Id.* at 1965.

As such, the City's Motion to Dismiss Plaintiffs' request for damages resulting from Aladro's suicide is DENIED. However, the City may move to strike Plaintiffs' request for damages resulting from Aladro's suicide, or for summary judgment as to that request, if it appears at a later stage that Plaintiffs cannot recover such damages from the City.

## IV.  CONCLUSION

For the reasons stated above, it is hereby ORDERED AND ADJUDGED that the City's Motion is GRANTED IN PART AND DENIED IN PART. Counts I and II of Plaintiffs' Complaint will go forward, as will Plaintiffs' request for damages resulting from Aladro's suicide. Counts VII and VIII are DISMISSED WITHOUT PREJUDICE. Plaintiffs have until December 5, 2007 in which to amend Counts VII and VIII.

DONE AND ORDERED in Chambers, Miami, Florida, this November 26, 2007.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Honorable Andrea M. Simonton
All Counsel of Record