## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 07-22680-CIV-HUCK/SIMONTON

TAMARA REGLA REYES, individually
and as personal representative of the
Estate of ERISLANDI ALADRO,

      Plaintiff,

vs.

CITY OF MIAMI BEACH, P. RICE-
JACKSON, and T. SERRANO,
individually,

      Defendants.

_____/

### OMNIBUS ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

THIS CAUSE is before the Court upon the following Motions:

1)     Defendant Rice-Jackson's Motion to Dismiss the Amended Complaint, filed January 10, 2008 (D.E. #18);

2)     Defendant T. Serrano's Motion to Dismiss the Amended Complaint, filed February 15, 2008 (D.E. #33);

3)     Defendant City of Miami Beach's Motion to Dismiss the Amended Complaint, filed January 14, 2008 (D.E. #21).

Defendant Rice-Jackson moves to dismiss the federal and state claims against her, claiming that Plaintiffs' pled facts fail to state causes of action under either 42 U.S.C. § 1983 (Counts III and IV) or Florida Statutes § 768.28 (Counts V and VI). Defendant T. Serrano moves to dismiss the federal and state claims against him (Counts III through VI) for the same reasons. Defendant City of Miami Beach (the "City") moves to dismiss the claims against it under section 1983 (Counts VII and VIII), claiming that Plaintiffs have failed to allege sufficient facts to state a section 1983 claim against a municipality.

The Court has reviewed the Motions, Plaintiffs' responses, Defendants' respective replies, the Amended Complaint, and all other relevant parts of the record.

## I. PROCEDURAL AND FACTUAL BACKGROUND[1]

On September 6, 2003, Plaintiffs were walking their dogs through a park in the area of Collins Avenue and 81st Street in Miami Beach, Florida. Plaintiff Tamara Regla Reyes was carrying her dog in her arms - the dog had a leash attached to its neck, and Reyes held the other end of the leash in her hand. Plaintiff Erislandi Aladro, Reyes' husband, was walking with Reyes. At this point Defendant P. Rice-Jackson, a police officer with the City of Miami Beach Police Department, approached Reyes and asked her to produce a dog leash and a plastic bag. Reyes cooperated with the request and also provided Rice-Jackson with identification. Rice-Jackson then began writing Reyes a ticket without articulating a reason why. When Reyes asked on what grounds she was being issued a ticket, Rice-Jackson responded that if Reyes left and/or refused to sign the ticket, Reyes would be placed in jail. Reyes told Rice-Jackson that she would sign the ticket, but asked for the officer's name. Rice-Jackson refused to tell Reyes her name, and became upset when Reyes asked that a supervisor be called. Rice-Jackson then threw Reyes against the police car, placed Reyes in handcuffs, and informed her that she was under arrest. Aladro witnessed this incident. When Aladro verbally protested, Rice-Jackson used force on him as well. In her subsequent police report, Rice-Jackson falsely claimed that her use of force on Plaintiffs was necessary, apparently claiming she used force in self-defense.

At some point during this incident T. Serrano, another City of Miami Beach police officer, arrived on the scene. One or both of the officers (the Amended Compliant does not specify which officer took what action) pushed Aladro to the ground, punched him in the face, and kicked him several times. Aladro did not resist the officers at any time.

Reyes witnessed the officers' use of force against her husband Aladro from the police car, where she sat handcuffed. As Reyes witnessed the officers using force on Aladro, she "fered [sic] for her life." When Reyes protested the treatment of Aladro, Rice-Jackson returned to the police car and pulled Reyes from the car by her arm. One of Reyes' handcuffs had come undone and upon seeing this Rice-Jackson threw Reyes to the ground, kicked her in the back, and restrained her again. Sometime after this, paramedics were summoned to the park and attended to Aladro. While Aladro

---

[1] This factual background is derived from Plaintiffs' Amended Complaint, as the factual allegations in a complaint must be taken as true when reviewing a motion to dismiss.

received medical attention, Reyes was taken to a police station.  Thereafter, in an attempt to "cover up" their use of force against Plaintiffs, the officers knowingly instituted false charges against Plaintiffs.  After many months the charges were finally nolle-prossed, including the citation for "dog running at large, no leash."

As a result of the officers' actions, Reyes experienced damage to her shoulders, back, and knees, and Aladro experienced lacerations to his face and also contusions on the rest of his body. Further, subsequent to the officers' actions, Aladro became depressed and committed suicide.  The Amended Complaint does not specify when Aladro committed suicide.

Plaintiffs filed suit against all three Defendants in state court, and the City removed the case to this Court on October 11, 2007.  *See* D.E. #1.  The City moved to dismiss the claims against it in the Complaint on December 18, 2007.  *See* D.E. #3.  After the Court granted in part and denied in part the City's first Motion to Dismiss (*see* D.E. #11), Plaintiffs filed an Amended Complaint on December 5, 2007 (*see* D.E. #12).  Thereafter, Rice-Jackson, Serrano, and the City moved separately to dismiss the claims against them in the Amended Complaint.  The Court now addresses all three ripe motions in this Omnibus Order.

## II.  MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).  "As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss."  *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996).

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)).  However, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Moreover, this circuit imposes a heightened pleading standard on claims under 42 U.S.C. §

1983 brought against individuals or entities capable of asserting a qualified immunity defense. *See GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998); *Swann v. S. Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004). Under the heightened pleading standard, the plaintiff must go beyond the notice pleading standard of Rule 8 and "allege with some specificity the facts which make out [his or her] claim." *GJR Invs.*, 132 F.3d at 1367. Indeed, "[s]ome factual detail in the pleadings is necessary to the adjudication of § 1983 claims" where the defendant may assert qualified immunity. *Id.*

### III.   ANALYSIS

**A.      Defendant Rice-Jackson**

**1.       State Claims under Section 768.28 of the Florida Statutes**

In Counts V and VI of their Amended Complaint, Plaintiffs seek to recover from Defendant Rice-Jackson based on Section 768.28 of the Florida Statutes. They claim that Rice-Jackson used "excessive and unreasonable" force against them, causing an "unwarranted assault and battery . . . that was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Am. Compl. ¶¶ 38-39, 41-42.

Section 768.28(9)(a) provides that a plaintiff may sue a municipal employee in tort if that employee acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." In such case, recovering from the employee is the plaintiff's exclusive remedy - the plaintiff may not recover from the municipal employer where its employee acted with bad faith or malice. *See, e.g.*, *Dist. Sch. Bd. of Lake County v. Talmadge*, 381 So. 2d 698, 699-703 (Fla. 1980) (holding that under section 768.28, "individual suits against an employee, but not against the state, are possible whenever the employee . . . has acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property").

Here, in Counts V and VI, Plaintiffs seek to recover from Rice-Jackson for assault and battery under Florida law, alleging that she acted with malice or bad faith. In Counts I and II, Plaintiffs seek to recover from the City based on those alleged assaults and batteries, claiming that Rice-Jackson acted in an "unreasonable" manner - in these counts, Plaintiffs do not allege Rice-Jackson acted with malice or bad faith. As the Court explained in its prior Order, *see* D.E. #11, Plaintiffs may plead

4

against a municipality and its employee in the alternative, *see* Fed. R. Civ. P. 8(d).

In her Motion, Rice-Jackson argues that the state law claims for assault and battery against her must be dismissed because her alleged conduct does "not rise to the level of severity required to invoke the liability of an individual officer, acting within the course and scope of . . . her employment."

### a)      Plaintiff Reyes' Claims

With respect to Reyes' claims, the Court finds that Reyes' factual allegations could support a cause of action against Rice-Jackson for assault and battery.   According to the Amended Complaint, Rice-Jackson approached Plaintiffs in a park to address whether their dog was on a leash, which it was.  Am. Compl. ¶¶ 8-9.  Rice-Jackson began writing Reyes a ticket "for no apparent reason." *Id.* ¶ 10.  When Reyes asked Rice-Jackson for her name and the name of her supervisor, Rice-Jackson "grabbed" her, "threw her against the police car, placed handcuffs on her and instructed her that she was under arrest." *Id.* ¶ 11.  Later in the incident, Rice-Jackson "kicked" Reyes in the back, apparently without any provocation. *Id.* ¶ 15.  Accepting this account as true and drawing all reasonable inferences in Reyes' favor, as the Court must in the context of a motion to dismiss, the Court holds that Reyes can state a claim under section 768.28(9)(a) against Rice-Jackson on the theory that Rice-Jackson acted with malice, in bad faith, or with wanton and wilful disregard for human rights or safety.

In seeking dismissal of Reyes' state law claims, Rice-Jackson argues that "[t]he Amended Complaint does not raise facts anywhere near as suggestive of maliciousness" as did the complaints in *Dukes v. Miami-Dade County*, No. 05-22665-Civ-Huck/Simonton (S.D. Fla. July 5, 2006) and in *Sanchez v. Miami-Dade County*, No. 06-21717, 2007 WL 1746190 (S.D. Fla. Mar. 28, 2007).  As Rice-Jackson points out,  this Court did state in its November 26, 2007 Order that the alleged actions of the officers in this case do not rise to the level of severity as the acts pled in those cases.  The Court made that statement in the context of determining whether the pled facts here so clearly indicate maliciousness that they could not possibly support a negligence claim under section 768.28(9)(a) against the City.  In this context, however, the question is whether Reyes stated a section 768.28(9)(a) claim against an *individual officer*.  In order to do so, Reyes need only plead facts indicative of malice or bad faith - not facts that are *so* egregious that they could *only* indicate

malice or bad faith.  Because the pled facts as to Rice-Jackson's treatment of Reyes could, at this stage, be reasonably interpreted to support either a theory of negligence or of bad faith, Reyes' state law claims against Rice-Jackson may go forward.

>    **b)    Plaintiff Aladro's Claims**

Aladro's state law claims against Rice-Jackson, on the other hand, are subject to dismissal. In support of his assault and battery claims, Aladro alleged only that he was "attack[ed]" by Rice-Jackson when he protested the treatment of his wife and that Rice-Jackson used "excessive force" on him.  Am. Compl. ¶¶ 12-13.  Aladro does not allege what actions Rice-Jackson took that amounted to an "attack" or to "excessive force."  Aladro also alleged he was "pushed to the ground, punched in the face and kicked several times." *Id.* ¶ 14.  However, Aladro does not specify which officer, Rice-Jackson or Serrano, took these actions.  The Court finds that Aladro's vague and conclusory allegations fail to satisfy the notice pleading standard - without knowing what actions she is alleged to have taken, Rice-Jackson does not have "fair notice" of what Aladro's state law claims are or the grounds upon which they rest. *Twombly*, 127 S. Ct. at 1964.

>    **2.    Federal Claims under 42 U.S.C. § 1983**

Rice-Jackson also seeks dismissal of the federal claims against her under section 1983, asserting qualified immunity.  Qualified immunity protects a public actor sued under federal law from liability unless his or her conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  In order to be entitled to qualified immunity, the defendant must have acted within the scope of his or her discretionary authority when the allegedly wrongful acts occurred. *Id.* at 1248.  Here, it is undisputed that Rice-Jackson acted within her discretionary authority as a police officer with the City of Miami Beach Police Department at all times pertinent to Plaintiffs' Amended Complaint. *See* Am. Compl. ¶¶ 9, 26, 32.

Because Rice-Jackson is entitled to qualified immunity, it is Plaintiffs' burden to show that such qualified immunity is inappropriate under the circumstances presented here. *See Kesinger*, 381 F.3d at 1248.  The qualified immunity analysis is a two-step inquiry. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, the Court must determine whether the alleged facts, if true, establish that the

defendant's conduct violated a constitutional right. *Id*. If the alleged conduct does not amount to a constitutional violation, the inquiry ends. *Id*. If the alleged conduct does amount to a constitutional violation, the Court asks whether the right was "clearly established" at the time. *Id.*; *see also, e.g.*, *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The Court will undertake this analysis with respect to each Plaintiff's allegations against Rice-Jackson. In so doing, the Court keeps in mind both that Plaintiffs must satisfy the heightened pleading standard applicable to their section 1983 claims against Rice-Jackson, and also "the fact that we generally accord official conduct a presumption of legitimacy." *Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007) (internal quotations and citations omitted).

a)      **Plaintiff Reyes' Claims**

Reyes seeks to recover from Rice-Jackson under section 1983 based on Rice-Jackson's alleged violation of Reyes' "Fourth and Fourteenth Amendment rights not to be subjected to the use of excessive force; to be free from unreasonable searches and seizures; not to be stopped without reasonable suspicion; not to be arrested falsely and without probable cause; and not to be maliciously prosecuted." Am. Compl. ¶ 28.

The Court will first analyze Reyes' claim for excessive force against Rice-Jackson under section 1983. According to the Supreme Court, "where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (alterations in original). While it is well-established that using excessive force in carrying out an arrest does violate the Fourth Amendment, it is equally clear that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Violations of the Fourth Amendment are determined with reference to an "objective reasonableness" standard, *id.* at 388, but there is no bright line rule for evaluating the reasonableness of an officer's actions. Rather, such a determination must be made based on the unique facts and circumstances of each case, taking into account such factors as: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the officers, and (3) whether the suspect is resisting arrest or attempting to evade arrest by flight. *Id.* at 396; *see*

7

*also Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993).  Further, the Eleventh Circuit has held that "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."  *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000); *see also Stachel v. City of Cape Canaveral*, 51 F. Supp. 2d 1326, 1331-32 (M.D. Fla. 1999) (granting qualified immunity to fire inspector and deputy sheriff where "the actual force used [on the plaintiff] was minimal and not plainly unlawful").

Here, Reyes pled that Rice-Jackson began writing her a ticket for "no apparent reason."  Am. Compl. ¶ 10.  Reyes provided Rice-Jackson with identification and stated that she would sign the ticket, but when she asked Rice-Jackson for her name, Rice-Jackson refused and became upset.  *Id.* ¶ 11.  When Reyes asked that a supervisor be called, Rice-Jackson allegedly "threw" Reyes against a police car using "extreme force," handcuffed her, and informed her that she was under arrest.  *Id.* Reyes further pled that when she protested the treatment of Aladro, her husband, from the back of a police car, Rice-Jackson pulled her out of the car by her arm.  *Id.* ¶ 15.  When Rice-Jackson saw that one of Reyes' handcuffs had come undone, she "threw" her to the ground and "kicked her in the back" before "putting further restraints on her."  *Id.*

Even applying the heightened pleading standard, Reyes has succeeded in pleading a violation of her Fourth Amendment rights.  Examining the pled facts in light of the *Graham v. Connor* factors, it does not appear that Reyes had committed any crime when Rice-Jackson allegedly applied force. 490 U.S. at 396.  According to Reyes' facts, she did not pose an immediate threat to Rice-Jackson and was not resisting arrest.  *Id.*  Further, taking Reyes' account as true, Rice-Jackson did not apply only "de minimus" force in "throwing" Reyes against a police car and to the ground and "kicking" her in the back when she offered no resistence.  In sum, examining the circumstances from the perspective of a reasonable officer in Rice-Jackson's position, it does not appear that the "level of force [was] necessary in the situation at hand.'"  *Lee v. Ferraro*  284 F.3d 1188, 1197 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001)).

Having found that Reyes sufficiently pled violation of a constitutional right, the Court must move on to the second prong of the qualified immunity analysis: whether Reyes' right was "clearly established" at the time of Rice-Jackson's alleged actions.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  The Eleventh Circuit has stated that conduct may be "clearly established" as unlawful in three ways: (1) through explicit statutory or constitutional statements, (2) through authoritative judicial decisions that establish "broad principles of law that are clearly applicable in a variety of factual contexts going beyond the particular circumstances of the decision that establishes the principle," and (3) most commonly, through "case law previously elucidated in materially similar factual circumstances." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1208-09 (11th Cir. 2007) (citing *Vinyard*, 311 F.3d at 1351-52).  The only courts relevant to the determination of "clearly established" law are the U. S. Supreme Court, the Eleventh Circuit, and the Florida Supreme Court.  *See Jenkins by Hall v. Talledega Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997).

In arguing that Rice-Jackson is not entitled to qualified immunity at this stage Reyes directs the Court's attention to the Eleventh Circuit case *Lee v. Ferraro*, which she argues involves similar facts to the case at bar.  284 F.3d 1188.  In that case the court held an officer was not entitled to qualified immunity where, in the course of arresting the plaintiff for honking her horn in traffic,  he "slammed" her head on the trunk of her car after she had been arrested, handcuffed, and "completely secured." *Id.* at 1199.  The Court also noted that the crime at issue in that case was relatively minor: honking one's horn in traffic.  *Id.*

Here, based on the alleged facts, Reyes had not committed any crime when Rice-Jackson "threw" her against the police car and arrested her.  Am. Compl. ¶ 11.  According to the Amended Complaint, Rice-Jackson placed Reyes in handcuffs and put her in the back of a police car, and all the while Reyes was completely compliant and offered no resistance whatsoever.  When she "protest[ed]" at some point to Rice-Jackson's treatment of her husband, Rice-Jackson returned to the police car and pulled Reyes out of the car by her arm.  *Id.* ¶ 15.  At some point one of Reyes' handcuffs came undone, and upon seeing this, Rice-Jackson "threw" Reyes to the ground and "kicked her in the back." *Id.*  Reyes suffered "severe damage to her shoulders, back and knees" as a result of Rice-Jackson's actions. *Id.* ¶ 18.

The Court finds that the facts in *Lee v. Ferraro* were sufficiently similar to Rice-Jackson's alleged actions against Reyes to "clearly establish" that those actions were unlawful.  While Reyes was not handcuffed at the time Rice-Jackson allegedly pulled her out of the car, threw her to the

9

ground, and kicked her in the back, as was the plaintiff in *Lee v. Ferraro,* based on the circumstances it appears that Reyes was completely subdued and that "all danger" had been "vitiated." 284 F.3d at 1199-1200. Reyes had apparently not committed *any* crime, and like the plaintiff in *Lee v. Ferraro*, Reyes had been cooperative, offered no resistance, and had not attempted to flee when Rice-Jackson threw her to the ground and kicked her in the back. According to Reyes, whose account the Court must credit at this stage, Rice-Jackson's actions resulted in severe damage to Reyes' shoulders, back and knees. Under the circumstances as alleged, Rice-Jackson's use of force was completely gratuitous. In sum, at this stage, Rice-Jackson is not entitled to qualified immunity on Reyes' section 1983 excessive force claim.

Reyes also seeks to recover from Rice-Jackson based on a section 1983 claim of false arrest, which implicates the Fourth Amendment right to be free from unreasonable searches and seizures. "An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was arguable probable cause for the arrest." *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). In general, "[p]robable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citation omitted). However, where qualified immunity applies to a claim of false arrest under section 1983, the "appropriate inquiry . . . is not whether there was probable cause, but whether there was 'arguable' probable cause to arrest." *Walker v. Prieto*, 414 F. Supp. 2d 1148, 1152 (S.D. Fla. 2006). Accordingly, a court applying the qualified immunity test to a claim of false arrest "must determine whether reasonable officers in the same circumstances and possessing the same knowledge as [the defendant] could have believed that probable cause existed to arrest" the plaintiff. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Further, "'the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest' . . . [S]o long as probable cause existed to arrest [the plaintiff] for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." *Whittington v. Town of Surfside*, 490 F. Supp. 2d 1239, 1251 (S.D. Fla. 2007) (quoting *Lee v. Ferraro*, 284 F.3d at 1196).

10

Here, based on Reyes' pled facts, when Reyes was arrested, handcuffed, and placed in a police vehicle, it does not appear that Rice-Jackson had "arguable" probable cause to arrest Reyes for any crime.  According to the Amended Complaint, before her arrest Reyes had been walking her dog with a leash, had complied with Rice-Jackson's requests, had provided identification upon request, and generally appeared to be cooperative and non-threatening.  Am. Compl. ¶¶ 8-11.  Based on these facts, the Court cannot say that a reasonable officer in the same circumstances as Rice-Jackson would have had probable cause to arrest Reyes for any crime.[2]  Further, it appears that Reyes did meet the heightened pleading standard by providing enough factual detail about the circumstances surrounding her arrest.  Thus, at least at this stage, Rice-Jackson is not entitled to qualified immunity on Reyes' section 1983 false arrest claim.

The Court next turns to Reyes' section 1983 malicious prosecution claim.  "[T]he Eleventh Circuit 'has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983.'"  *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1144 (11th Cir. 2007) (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).  "[T]he federal right to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution."  *Wood v. Kesler*, 323 F.3d at 882 n.15 (internal quotation and citation omitted); *see also, e.g.*, *Whiting v. Traylor*, 85 F.3d 581, 584 (11th Cir. 1996) (a section 1983 malicious prosecution is "the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead").  "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).  In the case of a warrantless arrest, a person is not "seized" until "the party is arraigned or indicted."  *Id.* at 1235.  Under Florida law, the elements of a malicious prosecution claim are: (1) an original judicial proceeding against the plaintiff was commenced or continued; (2) the defendant was the legal cause of the proceeding; (3) the termination of the

---

[2] The Court notes that in her Motion to Dismiss, Rice-Jackson did not suggest a crime for which there was arguable probable cause to arrest Reyes.

proceeding constituted a bona fide termination in favor of the plaintiff; (4) there was no probable cause for the proceeding; (5) there was malice on the part of the defendant; and (6) the plaintiff suffered damages as a result of the proceeding. *Id.* at 1234.

Here, Reyes failed to satisfy the heightened pleading standard because she provided virtually no factual basis for her section 1983 malicious prosecution claim. Reyes did not sufficiently allege she was "seized" within the meaning of a section 1983 claim for malicious prosecution - that is, indicted or arraigned. Indeed, Reyes only vaguely alleged that she was arrested and taken to a police station, that she hired an attorney, and that after "many months of litigation, the charges were nolle-prossed." Am. Compl. ¶¶ 11, 15-17. Reyes also failed to allege what criminal charges were brought against her - she only vaguely states that the "charges" against her, including "dog running at large, no leash," were "nolle-prossed." *Id*. ¶ 17. In fact, it is far from clear from the pled facts that the "citation" for "dog running at large, no leash" is a criminal charge, as opposed to a civil infraction.[3] In sum, Reyes failed to plead a violation of her Fourth Amendment right in connection with her section 1983 for malicious prosecution.

### b)    Plaintiff Aladro's Claims

Plaintiff Aladro also seeks to recover from Rice-Jackson under section 1983 for violation of his Fourth and Fourteenth Amendment rights "not to be subjected to the use of excessive force; to be free from unreasonable searches and seizures; not to be stopped without reasonable suspicion; not to be arrested falsely and without probable cause; and not to be maliciously prosecuted." *Id.* ¶ 34.

The Court first addresses Aladro's section 1983 excessive force claim. According to the Amended Complaint, when Aladro protested the force Rice-Jackson used on Reyes, Rice-Jackson "began attacking [Aladro] and used excessive force." *Id.* ¶ 12. The Amended Complaint further states that "[a]t some point, T. Serrano, another police officer, acting within the scope of his employment, arrived at the scene. [Aladro] was pushed to the ground, punched in the face and kicked several times. At no point did [Aladro] show resistance toward the officers." *Id.* ¶ 14. As discussed above with respect to Aladro's state law claims, Aladro does not specify what actions

---

[3] While the Court could *infer* that Reyes was arrested for a criminal law violation and indicted or arraigned on criminal charges, Reyes should make these allegations herself and not force the Court to fill in the blanks in this manner. Reyes should allege these elements specifically, if and when she repleads her section 1983 malicious prosecution claim.

Rice-Jackson took against him, or which officer, Rice-Jackson or Serrano, pushed him to the ground, punched him in the face, and kicked him.

The Court finds Aladro's allegations too vague to satisfy even the notice pleading standard of Rule 8(a), let alone the heightened pleading standard applicable to his section 1983 excessive force claim. Aladro did not allege violation of his Fourth Amendment right with "some specificity" - thus, Rice-Jackson is entitled to qualified immunity on Aladro's excessive force claim and the Court need not examine whether such right was "clearly established."

Aladro also seeks to recover against Rice-Jackson under section 1983 for false arrest and malicious prosecution, which implicate the Fourth Amendment. As addressed above, "[i]n order to establish a Fourth Amendment violation, [the plaintiff] must demonstrate that a seizure occurred and that it was unreasonable." *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997). "A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement *through means intentionally applied*." *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (internal quotations and citation omitted) (emphasis in original). To establish a malicious prosecution claim under section 1983, a plaintiff must allege violation of his Fourth Amendment right to be free from unreasonable seizures, as well as the elements of the common law tort of malicious prosecution. *See Kingsland*, 382 F.3d at 1234. Again, Aladro's allegations fail to allege violation of his constitutional rights under the heightened pleading standard. For purposes of his false arrest claim, because his allegations are so vague, it is unclear from the Amended Complaint if, when, or how Aladro was "seized" by Rice-Jackson. Further, Aladro's malicious prosecution claim fails for the same reason that Reyes' malicious prosecution claim fails - Aladro did not allege that he was "seized" in the context of a criminal prosecution by being arraigned or indicted, nor did he specify what criminal charges were brought against him.

In sum, because Aladro failed to adequately allege that any of his constitutional rights were violated, the Court need not proceed to the second step in the qualified immunity analysis: whether such rights were "clearly established" at the time.

**B.      Defendant Serrano**

**1.      State Claims under Section 768.28 of the Florida Statutes**

In Counts V and VI of their Amended Complaint, Plaintiffs also seek to recover from Defendant T. Serrano based on Section 768.28 of the Florida Statutes. They claim that Serrano used "excessive and unreasonable" force against them, causing an "unwarranted assault and battery . . . that was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Am. Compl. ¶¶ 38-39, 41-42.

In his Motion, Serrano argues that the state law claims for assault and battery against him must be dismissed because his alleged conduct does "not rise to the level of severity required to invoke the liability of an individual officer, acting within the course and scope of his/her employment." *See* D.E. #33. He argues that Plaintiffs failed to identify any actions Serrano took against Plaintiffs, much less any that would suggest bad faith or malice.

**a)      Plaintiff Reyes' Claims**

With respect to Reyes' claims, the Court finds that Reyes' factual allegations cannot support a cause of action against Serrano for assault and battery. As discussed above, Reyes' pled facts need only be reasonably capable of supporting either a theory of bad faith. However, Reyes does not plead *any* facts in support of her assault and battery claims against Serrano. Indeed, there is nothing in the Amended Complaint to suggest Serrano took any physical action at all against Reyes. As a result of Reyes' failure to offer any factual allegations in support of her assault and battery claims, Serrano does not have "fair notice" of what Reyes' state law claims are or the grounds upon which they rest. *Twombly*, 127 S. Ct. at 1964. Thus, Reyes' assault and battery claims against Serrano are subject to dismissal.

**b)      Plaintiff Aladro's Claims**

Aladro's state law claims against Serrano are also subject to dismissal. In the Amended Complaint Aladro alleged that "[a]t some point, T. Serrano, another police officer, acting within the scope of his employment, arrived at the scene. Erislandi Aladro was pushed to the ground, punched in the face and kicked several times." Am. Compl. ¶ 14. Aladro does not specify which officer, Rice-Jackson or Serrano, took these actions. These vague and conclusory allegations also fail to satisfy the notice pleading standard - without knowing what actions he is alleged to have taken,

14

Serrano does not have "fair notice" of what Aladro's state law claims are or the grounds upon which they rest. *Twombly*, 127 S. Ct. at 1964.

### 2.    Federal Claims under 42 U.S.C. § 1983

Serrano also seeks dismissal of the federal claims against him under section 1983, asserting qualified immunity. It is undisputed that Serrano acted within his discretionary authority as a police officer with the City of Miami Beach Police Department at all times pertinent to Plaintiffs' Amended Complaint. *See* Am. Compl. ¶¶ 14, 26, 32.

As explained above, because Serrano is entitled to qualified immunity, it is Plaintiffs' burden to show that such qualified immunity is inappropriate here. *See Kesinger*, 381 F.3d at 1248. The qualified immunity analysis is a two-step inquiry. *See Saucier*, 533 U.S. at 201. First, the Court must determine whether the alleged facts, if true, establish that the defendant's conduct violated a constitutional right. *Id*. If the alleged conduct does not amount to a constitutional violation, the inquiry ends. *Id*. If the alleged conduct does amount to a constitutional violation, the Court asks whether the right was "clearly established" at the time. *Id.*.

### a)    Plaintiff Reyes' Claims

Reyes' section 1983 claims against Serrano are subject to dismissal. Reyes cannot state a section 1983 claim for excessive force or false arrest against Serrano because she failed offer any factual allegations suggesting Serrano violated her constitutional rights. Indeed, from Plaintiffs' account in their Amended Complaint, it appears that Rice-Jackson was the officer who allegedly used force on, handcuffed, and arrested Reyes, not Serrano. Especially considering the applicable heightened pleading standard, Reyes has failed to plead violation of her constitutional rights. Thus, the Court need not examine whether those rights were "clearly established," and Serrano is entitled to qualified immunity on Reyes' excessive force and false arrest claims.

Further, Reyes' malicious prosecution claim against Serrano is identical to her malicious prosecution claim against Rice-Jackson, and thus fails for the same reasons. *See supra* 11-12.

### b)    Plaintiff Aladro's Claims

Aladro's section 1983 claims against Serrano are also subject to dismissal, for the same reasons that Aladro's section 1983 claims against Rice-Jackson are subject to dismissal. Regarding Aladro's section 1983 excessive force claim, according to the Amended Complaint when Aladro

15

protested the force Rice-Jackson used on Reyes, Rice-Jackson "began attacking [Aladro] and used excessive force." Am. Compl. ¶ 12. "At some point, T. Serrano, another police officer, acting within the scope of his employment, arrived at the scene. [Aladro] was pushed to the ground, punched in the face and kicked several times. At no point did [Aladro] show resistance toward the officers." *Id.* ¶ 14. It is not apparent from these allegations what actions Serrano allegedly took against Aladro, or which officer pushed Aladro to the ground, punched him in the face, and kicked him. Further, Aladro does not offer sufficient factual allegations to support his false arrest and malicious prosecutions claims. In sum, Aladro's vague allegations do not state a violation of any of his constitutional rights under the heightened pleading standard. Thus, Serrano is entitled to qualified immunity based on the first prong of the analysis and the Court need not proceed to the second prong: whether such rights were "clearly established."

**C.     Defendant City of Miami Beach**

In Counts VII and VIII of the Amended Complaint, Plaintiffs seek to recover from the City based on section 1983. This represents Plaintiffs' second attempt to state a claim under section 1983 against the City - Plaintiffs' section 1983 claims against the City in their original Complaint were dismissed by this Court under Federal Rule of Civil Procedure 12(b)(6). *See* D.E. #11.

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

**1.     Federal Claims under Section 1983**

**a)     Plaintiff Reyes' Claim**

As explained above, Reyes did sufficiently allege violation of her Fourth Amendment right to be free from unreasonable searches and seizures, where she alleged excessive force and false arrest claims under section 1983.[4] Thus, the Court next considers the other requirements for stating a

---

[4] The City argues in its Motion to Dismiss that Plaintiffs failed to allege violation of their constitutional rights. Plaintiffs insist that the Court should not entertain this argument because it was raised in the City's Motion to Dismiss the Amended Complaint, but not in its Motion to Dismiss the original Complaint. However, Plaintiffs' Amended Complaint superceded their original Complaint

section 1983 claim against the City.  As the Court explained in its November 26, 2007 Order, a municipality such as the City cannot be held liable under section 1983 for the acts of its employees under a theory of *respondeat superior*.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.").  A municipality may only be held liable under section 1983 where there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Canton*, 489 U.S. at 385; *see also Bd. of County Comm'rs v. Brown*, 520 U.S. at 404.  Specifically, a plaintiff may seek to establish a municipality's liability by identifying "either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]."  *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  Further, municipal liability may be based on a claim of inadequate training or supervision where a municipality's failure to train or supervise its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, such that the failure "'can be properly thought of as a [municipal] policy or custom that is actionable under § 1983.'"  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489-90 (11th Cir. 1997) (quoting *Canton*, 489 U.S. at 389).

Regardless of whether a plaintiff attempts to state a claim under section 1983 by alleging a policy or a custom, he or she must also identify an official who speaks with "final policymaking authority for [the municipality] concerning the act alleged to have caused the particular constitutional violation in issue."  *Grech*, 335 F.3d at 1330.  Indeed, "municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

In the Amended Complaint, it appears that Reyes has succeeded in identifying a responsible City policymaker: the City Manger.  Am. Compl. ¶ 46; *see Mount Sinai Med. Ctr. of Greater Miami, Inc. v. City of Miami Beach*, 706 F. Supp. 1525, 1529 (S.D. Fla.1989) (treating the City Manager as a policymaker for the City of Miami Beach).

However, Reyes again fails to state a proper section 1983 claim against the City.  This is

---

and entitled the City to file a new motion to dismiss.  Thus, the Court will entertain any arguments raised by the City in its Motion to Dismiss the Amended Complaint.

because the additional allegations in the Amended Complaint do not cure the flaws discussed in the Court's November 26, 2007 Order - that is, Reyes still fails to allege sufficient facts to suggest that she was injured as a result of the City's official policy or widespread custom. As the Court explained in its prior Order, the original Complaint alleged only Reyes' own incident, and offered "nothing to show it was not . . . isolated." *Sanchez*, 2007 WL 1746190, at \*3. While Reyes is correct in that she need not "adduce" or "articulate evidence" at this stage to survive the City's Motion to Dismiss (*see* D.E. #26 at 11), she *does* have to offer sufficient factual allegations to satisfy the notice pleading standard and "raise [her] right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965 (citation omitted); *see also, e.g.*, *Montalvo*, 84 F.3d at 409 n.10 ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss.").

Reyes' amended section 1983 claims against the City contains several new allegations. For example, she now alleges that the City "failed, through knowing and/or reckless and/or deliberate and/or conscious indifference, to instruct, supervise, control and discipline, on a continuing basis, the duties of personnel and officials to refrain from unlawful actions leading to the arrest and excessive force used against Plaintiff and others." Am. Compl. ¶ 46(b). She also alleges that the City's "decisionmakers should not have allowed its agents and employees to seek and obtain Plaintiff's arrest and use excessive force in the course thereof," which is essentially part of her "failure to train" and/or inadequate supervision claim. *Id.* ¶ 46(a).

Reyes' new allegations are conclusory and fail to cure the defects in her section 1983 claim against the City. As this Court stated in *Sanchez*, an "allegation that the [municipality] did not train and supervise its officers with no specifics is not sufficient to establish that the police officers were acting under an official [municipal] policy." 2007 WL 1746190, at \*2; *see also, e.g.*, *Hall v. Smith*, 170 Fed. Appx. 105, 108 (11th Cir. 2006) (affirming dismissal of section 1983 claim against a municipality where the plaintiff "alleged no factual support for his conclusory statement that the [municipality] had a policy or custom of grossly inadequate supervision and training of its employees"); *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993) (affirming dismissal of section 1983 claim against the county where plaintiff failed "to allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability"); *Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213, 1225 (S.D. Fla. 2007) (dismissing

section 1983 claim where plaintiffs "failed to allege any facts" in support of her claim beyond her own incident). Just as in *Hall v. Smith*, No. 05-68J25MMH, 2005 WL 1871144, at *4 (M.D. Fla. July 27, 2005), Reyes has "not presented facts showing that the municipality knew of a need to train and/or supervise in a particular area . . . Plaintiff has not presented one incident of past misconduct which would have put the City on notice of a need for improved training or supervision. In sum, there are no allegations supporting a claim that there was a history of widespread abuse." *Aff'd*, *Hall v. Smith*, 170 Fed. Appx. 105.[5]

Reyes further alleges that the City, through the City Manager or Police Chief, "ratified the improper and malicious conduct of its officers with knowledge of its illegality. Upon information and belief, there are numerous incidents of [the City] similarly ratifying such acts in the past." Am. Compl. ¶ 46(d). Generally, as the Supreme Court has explained, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "For plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory . . . they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Garvie v. City of Ft. Walton Beach, Fla.*, 366 F.3d 1186, 1189 (11th Cir. 2004) (internal quotations and citation omitted).

Here, Reyes has not alleged any facts in support of this theory - that is, she has not offered any facts supporting the theory that the City's final policymaker became aware of Rice-Jackson's actions and ratified both her conduct and the basis for such conduct. Thus, Reyes has not succeeded in raising this "ratification" theory above the speculative level. *See, e.g.*, *Hazel v. Sch. Bd. of Dade County, Fla.*, 7 F. Supp. 2d 1349, 1354-55 (S.D. Fla. 1998) (dismissing section 1983 claim against

_____

[5] Reyes also alleges that the City "does not train and/or instruct and/or control its officers properly because its officers would not otherwise seek and obtain Plaintiff's arrest and use excessive force under the facts of this case." Am. Compl. ¶ 46(b). Such circular reasoning does not cure the defect in her section 1983 claim. If Reyes succeeds in stating a section 1983 claim against a municipality on the basis of such an allegation - that the municipality *must* have had a policy or custom of failing to train their officers, solely by virtue of the municipal employees in this lawsuit behaving a certain way - she would essentially be suing under a theory of *respondeat superior*. The Supreme Court has clearly and repeatedly rejected this result.

municipality where, among other fatal flaws, the plaintiff failed to allege any facts showing that the alleged final policymaker "ratified" the alleged acts of a municipal employee).

Finally, Reyes alleges that the City "approves of a police code of silence wherein other officers and supervisors habitually cover up illegal arrests and the excessive use of force to exonerate officers from potential civil liability," Am. Compl. ¶ 46(e), and that the City has a "custom of allowing officers free rein [sic] to use excessive force and arrest without cause through a knowing failure to act by policymakers of actions by subordinates that are so consistent and pervasive that they have become accepted customs in the department," *id.* ¶ 46(f).  Again, Reyes failed to allege "any facts capable of supporting a finding that [the City's] actions or omissions" with regard to Reyes' arrest "were part of a widespread practice rather than an isolated event."  *Rosario*, 490 F. Supp. 2d at 1225; *see also, e.g.*, *Moore v. Miami-Dade County*, No. 06-22705, 2007 WL 4644629, at *6 (S.D. Fla. Dec. 10, 2007).  Reyes has offered only conclusory allegations in support of her contention that the City had a widespread, pervasive custom of allowing its police officers to use excessive force. Reyes insists that she will "ascertain" the facts supporting her section 1983 claim against the City during the discovery process.  Am. Compl. ¶ 46(c).  However, Reyes must still offer *some* factual basis to support her claim at this stage.  In sum, because Reyes has still not offered any facts to raise her section 1983 claim against the City above the "speculative level," that claim is again subject to dismissal.  *Twombly*, 127 S. Ct. at 1965.

b)    **Plaintiff Aladro's Claim**

As discussed above, Aladro failed to sufficiently allege violation of his constitutional rights. Thus, his section 1983 claim against the City fails.  However, even if he had adequately alleged violation of his constitutional rights, his section 1983 claim against the City would fail for the same reasons that Reyes' claim fails, because the allegations supporting his section 1983 claim against the City are identical to Reyes.'

## IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED AND ADJUDGED that

1)      Rice-Jackson's Motion to Dismiss the Amended Complaint (D.E. #18) is GRANTED IN PART as to Reyes.  Reyes' state law assault and battery claims against Rice-Jackson may go forward.  Reyes' section 1983 malicious prosecution claim against Rice-Jackson is DISMISSED WITHOUT PREJUDICE, but her section 1983 excessive force and false arrest claims may go forward.  Reyes may replead her malicious prosecution claim by **Friday, March 21, 2008** if she can cure the defects discussed above.  Further, Rice-Jackson's Motion to Dismiss the Amended Complaint (D.E. #18) is GRANTED as to Aladro.  All of Aladro's state law and section 1983 claims against Rice-Jackson are DISMISSED WITHOUT PREJUDICE.  Aladro may replead those claims by **Friday, March 21, 2008** if he can cure the defects discussed above.

2)      T. Serrano's Motion to Dismiss the Amended Complaint (D.E. #33) is GRANTED. Both Plaintiffs' state and federal claims against Serrano are DISMISSED WITHOUT PREJUDICE.  Reyes and Aladro may replead those claims by **Friday, March 21, 2008** if they can cure the defects discussed above.

3)      City of Miami Beach's Motion to Dismiss the Amended Complaint (D.E. #21) is GRANTED.  Both Reyes' and Aladro's section 1983 claims against the City are DISMISSED WITH PREJUDICE.

DONE AND ORDERED in Chambers, Miami, Florida, this March 13, 2008.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Honorable Andrea M. Simonton
All Counsel of Record

21